UNIVERSAL AUTOMOBILE INSURANCE COMPANY V.
D. H. CULBERSON ET AL.

No. 6445. Decided October 30, 1935.
Rehearing overruled November 27, 1935.
(86 S. W., 2d Series, 727; 87 S. W., 2d Series, 475.)

*T. R. Mears,* of Gatesville, *J. L. Goggans,* of Dallas, *McClellan, Lincoln & Williams,* of Waco, for plaintiff in error.

The policy as between the company and assured is one of indemnity against loss, that is, a promise to pay assured if he pays the judgment, while as between the company and the injured person, the policy is a direct promise to pay the judgment upon the occurrence of certain conditions stated in the policy. Hanson v. Wayman, 280 S. W., 869; Owens v. Jackson-Hinton Gin Co., 217 S. W., 762; Stewart v. Gordon, 65 Texas, 344; Jessen v. Scott, 14 S. W. (2d) 290; Bank of Snyder v. Howell (Com. App.), 208 S. W., 908.

*R. B. Cross* and *Robt. W. Brown,* both of Gatesville, for defendants in error.

Cites cases in opinion.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

On March 6, 1930, plaintiff in error, Universal Automobile Insurance Company, issued an automobile accident policy covering a car belonging to defendant in error, D. H. Culberson. The terms of this policy will be hereinafter more fully reviewed. Shortly after the policy was issued and while the car was being driven by Culberson's daughter, there was an accident in which Miss Minnie Lou Witt was injured. In a suit brought by Miss Witt against Culberson she was awarded a

judgment for $10,536.88 and costs of suit. The various proceedings prior to the rendition of this judgment are set out in the opinion of the Court of Civil Appeals which is reported in 54 S. W. (2d) 1061. After the issuance of execution, which was returned unsatisfied, Culberson brought this suit against the Insurance Company to recover the amount of the judgment against him in favor of Miss Witt, together with $750.00 attorney's fees, interest and costs. Miss Witt intervened in this suit and asked judgment in her favor for $10,536.88.

■ The Insurance Company filed two pleas in abatement, one as to the suit by Culberson and the other as to the suit by Miss Witt. These pleas were overruled. In its answer it set out at great length many facts and circumstances tending to show that in many particulars Culberson had failed and refused to cooperate with the company in making a full and fair defense to the action; and had colluded with Miss Witt in such a manner as to permit the judgment to go against him. The pleadings setting out this matter were stricken out by the trial court on special exceptions, and the Court of Civil Appeals held that this was error. The opinion of the court upon that point is supported by a full and clear statement of the various allegations of the pleadings tending to raise the issue of failure to cooperate. We therefore approve the conclusion of the Court of Civil Appeals in that regard, and its action in reversing and remanding on that ground.

We do not approve the opinion of the Court of Civil Appeals in all other respects, and in view of another trial we proceed to discuss the rights of the parties under the policy of insurance; this being necessary in view of various assignments of error in petitions for writs of error by both parties.

The portion of the policy defining the primary obligation of the company as regards personal injuries to third persons by reason of the ownership of the car is in Item 6 of "Schedule of Perils and Extent of Each Coverage," and is as follows:

"The Company does hereby agree to insure the Assured named and described in the 'Schedule of Statements' herein, for the term therein specified against *direct loss by reason of liability imposed by law* upon the Assured for damages by reason of the ownership or maintenance of the automobile described in Statement 6 of the 'Schedule of Statments,' and the use thereof for the purposes described in Statement 7 of the 'Schedule of Statements' (including loading and unloading thereof), to an amount not exceeding the limits hereinafter

stated if such loss be sustained on account of Bodily injuries or death accidentally suffered or alleged to have been suffered by any person or persons (excluding any employee of the Assured suffering injuries or death while engaged in the operation, maintenance or repair of the automobile insured hereunder or while engaged in the usual course of the trade, business, profession or occupation of the Assured) as the result of an accident while this policy is in force; provided there is a specific premium charge made in writing in Item 6 of the 'Schedule of Coverage' on the preceding page. The liability of the Company under this Item 6 for loss or expense on account of an accident resulting in bodily injuries to or in the death of one person is limited to the amount named in Item 6, Section 2 of the Schedule of Perils and subject to the same limit for each person, the total liability of the Company for loss or expense on account of an accident resulting in bodily injuries to or in the death of more than one person is limited to the amount named in Item 6, Section 2 of the Schedule of Perils." (Emphasis ours.)

The amount named in Item 6 of Section 2 of the Schedule of Perils was limited to $5,000.

Item 7 pertained to damages and destruction of property.

There were further provisions more clearly defining liability and the limitations thereon, the same being contained in Subdivisions (A), (B) and (C) immediately after Items 6 and 7 above mentioned. These provisions are as follows:

"In the event that loss from the perils set forth in Item 6 and/or Item 7 is insured against hereunder, then as respects the peril or perils so insured against the limits of the Company's liability shall be:

"(A)  To investigate all accidents covered by Item 6 and/or Item 7 of the 'Schedule of Coverage' of this policy and at its expense to employ attorneys to represent the Assured in all suits brought hereon, whether groundless or not; and

"(B)  In event a final judgment be rendered against the Assured, to pay the same to an amount not exceeding the limits specified herein; and in addition,

"(C)  To pay, irrespective of the limit of liability stated in the Policy, all costs taxed against the Assured in any such defended suit, all expenses incurred by the Company, all interest accruing after entry of judgment until the Company has paid, tendered or deposited in Court such part of such judgment as does not exceed the limit of the Company's liability thereon, also any expense incurred by the Assured for

such immediate surgical relief as shall be imperative at the time of bodily injury."

Subdivision (Q) of "Conditions, Limitations and Agreements is as follows:

"It is understood and agreed that the Insolvency or Bankruptcy of the Assured or other persons entitled to benefit hereunder shall not release the Company from the payment of damages for injuries or loss occasioned during the life of the policy. In case execution against the Assured or such other defendants is returned unsatisfied in an action brought by the injured (or. if death results from the accident by such other parties in whom the right of action vests) an action may be maintained by the injured person (or such other parties in whom the right of action vests) against the Company for the amount of the judgment of said action not exceeding the amount of the policy."

The clause with reference to cooperation on the part of the assured was Subdivision (O) of "Conditions, Limitations and Agreements," and is as follows:

"Upon the occurrence of any loss or accident covered under Section 2 of the Schedule of Perils, and irrespective of whether any injury or damage is apparent at the time, the Assured shall give immediate written notice to the Company at its Office in Dallas, Texas, or to its authorized agent, with the fullest information obtainable at the time; if a claim is made on account of any such accident the Assured shall give like notice thereof immediately after such claim is made, with full particulars; if thereafter any suit is brought against the Assured to enforce such claim, the Assured shall immediately forward to the Company or its authorized agent every summons or other process as soon as the same shall have been served; whenever requested by the Company, the Assured shall aid in effecting settlement, securing information and evidence, the attendance of witnesses and in prosecuting appeals, and at all times render all possible cooperation and assistance; the Assured shall not voluntarily assume any liability or interfere in any negotiations for settlement or in any legal proceedings or incur any expense or settle any claim, except at Assured's own cost, without the written consent of the Company previously given."

■ When we come to construe the primary insuring clause of this policy, we find that it insured the assured against "direct loss by reason of liability imposed by law upon the assured for damages by reason of the ownership"—of the automobile—if

the loss "be sustained on acount of bodily injuries or death accidentally suffered or alleged to have been suffered by any person or persons." We construe this as an indemnity obligation, rather than a liability contract, and, in the absence of the other provisions of the policy hereinafter discussed, defendant in error Culberson could assert no cause of action against the insurance company on account of the judgment in favor of Miss Witt until he has paid the same or some portion thereof, and then only to the extent he has paid. American Automobile Insurance Co. v. Cone, 257 S. W., 961; Stag Mining Co. v. Missouri, Fidelity & Casualty Co. (Mo. App.), 209 S. W., 321, and authorities there cited. As he admitted that he had not paid any part of the judgment against him in favor of Miss Witt, that the execution issued thereon had been returned unsatisfied, and that he had no property subject to execution, and as he did not purport to bring his suit in behalf of Miss Witt, and did not allege a purpose to pay her any recovery obtained by him, his suit was subject to abatement, because prematurely brought. This is an entirely different case from the case of Stowers Furniture Company v. American Indemnity Co. (Com. App.), 15 S. W. (2d) 544, wherein it was shown that the company had full charge of the defense of the suit brought by the injured party and it was further shown that the Stowers Furniture Company had paid in full the judgment against it in favor of Miss Bichon, the injured party.

In the case of American Indemnity Company v. Fellbaum, 114 Texas, 127, 263 S. W., 908, 37 A. L. R., 633, under certain provisions of the policy similar to Subdivisions (A), (B) and (C) set out above, where the insurance company had taken full charge of the defense of the suit until final judgment, it was held that the administrator of an estate against which a judgment for damages had been rendered could maintain a suit upon the policy for the amount of the judgment without first having paid same. The decision was upon the peculiar wording of the policy and upon the ground that as the company had taken full charge of the case and had displaced the assured in the matter of conducting the defense for making settlement, it was equitably bound by the judgment the same as if it had been a party to the suit. It must be noted, however, that the suit in that instance was brought after the claim of the injured party had been approved by the administrator and allowed by the probate court, and the suit was manifestly

in her behalf. Under Subdivisions (A), (B) and (C) above set out, construed in connection with Subdivision (O) of Conditions, Limitations and Agreements, we think it was clearly contemplated that the insurance company should take charge of the defense of all suits brought against the insured, and would conduct the defense until final adjustment or judgment; and in the event a final judgment was rendered against the insured, to pay the same to an amount not exceeding the limits specified, as well as all costs taxed against the assured. In the event the company did so take charge of a suit to the exclusion of the assured, there being no breach of duty on the part of the assured, and final judgment was against the assured, the company was directly obligated to pay such judgment to the injured party and to pay all costs to the officers of the court. These provisions do not provide for payment to the assured himself. If the company under such circumstances should refuse to pay the injured party on the judgment an amount equal to the limits specified in the policy and should refuse to pay the costs taxed against the assured in the suit, then assured could bring a suit to enforce payment of the judgment and the costs, without first paying same, provided such suit was brought expressly for the use and benefit of the holder of the judgment and the officers of the court. This is clearly the reasonable construction of these provisions of the policy.

These provisions, however, do not give the assured any right to prosecute the suit in his own behalf before paying the judgment or the costs. Nor do they give him any right to sue for damages because of failure of the company to make a settlement of Miss Witt's claim. As to his alleged cause of action in that regard Culberson cannot assert same until he has paid some sum on the judgment in excess of the $5,000.00 limit in the policy; and then only to the extent of his payment.

In this case, however, there is no necessity for Culberson to bring any action in favor of Miss Witt, because under the Bankruptcy and Insolvency clause (Culberson being insolvent) she has a right to prosecute a suit in her own behalf "for the amount of the judgment of said action not exceeding the amount of the policy," with interest from the date of the entry of the judgment. As this clause expressly fixes her rights she of course cannot sue for other sums.

As Miss Witt's rights rest entirely under the policy, the insurance company has a right in an action brought by her,

as well as in an action which may be brought by Culberson, to litigate the question of failure to cooperate under the provisions of Subdivision (O) set out above. American Indemnity Company v. Martin, ante, p. 73, 84 S. W. (2d) 697.

If a situation should arise under which Miss Witt and Culberson might each maintain a suit, it would be proper to join their causes of action in one suit, so as to litigate the question of failure to cooperate but one time.

From what has been said it is apparent that there are several matters involved which are inseparably connected with the question of the failure of Culberson to cooperate as provided by Subdivision (O) above set out. As stated above, it is our conclusion that by Subdivisions (A), (B) and (C), construed in connection with Subdivision (Q), it was contemplated that Culberson was not to undertake the defense of any suit, or to interfere in any legal proceeding, unless requested to do so in writing, and that, therefore, the company was charged with the duty of assuming the full and complete defense of any suit and to employ its own attorneys for that purpose. On the other hand, Culberson was obligated to cooperate in several important particulars. His failure to cooperate in any one or more substantial or material particulars specified in Subdivision (O), if established, would be sufficient to destroy his right to claim indemnity under the policy. As to what are material obligations, and as to what will constitute a compliance or amount to a non-compliance with this clause, reference may be had to the very exhaustive and able annotation in 72 A. L. R., pp. 1446 to 1507. The failure, therefore, of the Insurance Company to take charge of the defense of the suit for Miss Witt against Culberson, which resulted in the judgment in question, has a direct relation to the matter of cooperation on the part of Culberson. If there was a breach of his obligations in any material or substantial particular, or any interference by him in any legal proceedings, the company's attorneys had a right to withdraw from the case. If, however, there was no failure on the part of Culberson to cooperate in any of the particulars named in the policy, and there was no substantial or material interference on his part in any legal proceedings, the company was not released from its obligation to defend the suit, and would be in the same position as if it had taken charge of the defense.

The judgment of the Court of Civil Appeals reversing and remanding the case is affirmed.

Opinion adopted by Supreme Court October 30, 1935.

### ON MOTION FOR REHEARING.

In motion for rehearing we are requested to clarify our opinion and state more fully our conclusions as to the right of D. H. Culberson to maintain suit in the following particulars:

First: For the benefit of Minnie Lou Witt in the amount in excess of $5,000.00.

Second: His right to maintain the suit to the extent of $750.00 for the benefit of his attorney in defending him in the suit by Minnie Lou Witt.

Third: His right to maintain the suit for the use and benefit of the officers of the Court for the court costs.

In our opinion, we made it clear that under the terms of the contract, Miss Witt has no rights thereunder for any amount "exceeding the amount of the policy," towit, $5,000.00, with interest thereon from the date of the entry of the judgment. It follows therefore that Culberson cannot sue for her benefit for any sum in excess of this amount. As Miss Witt has sued in her own behalf, we see no reason why Culberson should sue for her benefit as to this part of the judgment.

As to the right of Culberson to maintain suit to the extent of $750.00 for the benefit of his attorneys in defending him in the suit brought by Miss Witt, we think it clear that if it be shown that there was no failure on his part to cooperate in any of the particulars named in the policy, and there was no substantial or material interference on his part in any legal proceeding, and the attorneys for the company refused to defend the suit brought by Miss Witt without a just and reasonable excuse therefor, the company would be liable for reasonable attorneys' fees incurred by Culberson in defending the suit.

As to the third inquiry, we think it would be proper for the court, rather than to sustain the plea in abatement, to permit Culberson to amend his pleading in this suit so as to more clearly show that his action for costs and attorneys' fees is brought for the benefit of the officers of the court and his attorneys.

From the foregoing, as well as what was said in the original opinion, it is clearly evident that the question of cooperation on the part of Culberson with the Insurance Company in the

suit by Miss Witt, which resulted in the judgment in her favor, is of such importance as to justify the reversal and remanding of the case in order that the question may be thoroughly and fairly tried. The motion for rehearing is overruled.

Opinion adopted by the Supreme Court November 27, 1935.